# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY McNEIL, | |
| Plaintiff, | CIVIL ACTION NO. 3:15-cv-01243 |
| v. | (BRANN, J.) |
| | (SAPORITO, M.J.) |
| GLOBAL TEL-LINK, et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

The plaintiff, Terry McNeil, commenced this action by filing his original *pro se* complaint on June 25, 2015. At the time, McNeil was incarcerated at SCI Benner Township, in Centre County, Pennsylvania.

## I. BACKGROUND

McNeil's original complaint alleged that defendant Global Tel-Link ("GTL") charged excessive long-distance telephone service rates to him and other inmates at SCI Benner Township between 2012 and 2015, and that this conduct violated his federal civil rights, made actionable under 42 U.S.C. § 1983. On November 7, 2016, we recommended that the original complaint be dismissed as frivolous because GTL is not a state actor for § 1983 purposes, and for failure to state a claim because McNeil's dissatisfaction with the long-distance rates charged by GTL did not rise to

the level of a constitutional violation. On November 13, 2017, the Court adopted our recommendations over the plaintiff's objections and dismissed the original complaint as frivolous and for failure to state a claim, granting the plaintiff leave to file an amended complaint within twenty-one days.

Within that twenty-one day period, the plaintiff submitted two separate documents styled as amended complaints, which we have liberally construed *together* as McNeil's operative amended complaint. (Doc. 54; Doc. 55). *See generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013) (discussing a court's obligation to liberally construe *pro se* pleadings and other submissions, particularly when dealing with imprisoned *pro se* litigants).

The first of these two documents is captioned as an "Amended Consolidated Class Action Complaint." (Doc. 54). This document is virtually identical to an "Amended Consolidated Class Action Complaint" previously filed in another federal court. *See* Amended Consolidated Class Action Complaint (ECF No. 47), *In re Global Tel\*Link Corp. ICS Litig.*, Civil Action No. 5:14-cv-5275-TLB (W.D. Ark. filed Apr. 23, 2015).[1] Indeed,

---

[1] For the sake of clarity, we refer to documents filed in this case as "Doc. __" and documents filed in the Arkansas case as "ECF No. __."

Doc. 54 filed in this case is a photocopy of ECF No. 47 filed in the Arkansas case, with the first page retyped to name McNeil in the caption, the words "by counsel" in paragraph 3 on page 2 omitted by the use of correction fluid or correction tape, and the final pages containing counsel signatures retyped to substitute McNeil's *pro se* signature block instead. *Compare* Amended Consolidated Class Action Complaint (Doc. 54), *McNeil v. Global Tel-Link*, Civil Action No. 3:15-cv-01243 (M.D. Pa. filed Nov. 14, 2017), *with* Amended Consolidated Class Action Complaint (ECF No. 47), *In re Global Tel*Link Corp. ICS Litig.*, Civil Action No. 5:14-cv-5275-TLB (W.D. Ark. filed Apr. 23, 2015). Except for these slight and insubstantial modifications, the two documents are literally identical. Both assert the same two legal claims against GTL: a Federal Communications Act ("FCA") claim and an unjust enrichment claim, based on allegations that GTL charged "exorbitant rates and fees" for telephone calls to and from inmates under exclusive contracts with correctional facilities around the United States, which the Federal Communications Commission had found to be "unreasonably high, unfair, and far in excess of the cost of providing service." Both seek certification of a class, defined as follows:

> [A]ll persons in the United States who, at any time since 2000, have paid to use the telephone services provided by

> GTL or its subsidiaries in order to make or receive
> telephone calls involving a person incarcerated in any
> state in the United States . . . .

The second document construed in this case as part of McNeil's amended complaint asserts cursory FCA and unjust enrichment claims against the same defendant, along with allegations of fact specific to McNeil and his own personal use of GTL telephone services on and after June 18, 2001. (Doc. 55). This document also recites a second and different class definition:

> The Pennsylvania UE Subclass: All persons who, while a resident of Pennsylvania[,] Georgia, Florida, Idaho, Kansas, Kentucky, Maryland, Maine, Mississippi, Missouri, New Mexico, Nevada, Oregon, South Dakota, Virginia or Wisoncsin [*sic*], within the applicable limitations period, paid to use inmate calling services provided by Global Tel Link (including its operating subsidiaries) to make or receive one or more interstate phone calls from a correctional facility during a period or time when Global Tel-Link paid the facility a commission of any type in connection with the interstate calls.

(*Id.*).

Prior to the filing of either of these two documents in this case, the Arkansas federal district court had granted a motion for class certification and the appointment of class representatives and class counsel in the Arkansas case. Mem. Op. & Order (ECF No. 138), *In re Global Tel\*Link*

*Corp. ICS Litig.*, Civil Action No. 5:14-cv-5275-TLB (W.D. Ark. Feb. 3, 2017). The Arkansas court certified a nationwide "FCA Class" to pursue a common claim under the Fair Communications Act, as defined below:

> All persons in the United States who, at any time within the applicable limitations period: (1) paid to use inmate calling services provided by Global Tel*Link (including its operating subsidiaries) to make or receive one or more interstate phone calls from a correctional facility during a period or time when Global Tel*Link paid the facility a commission of any type in connection with the interstate calls; and/or (2) paid deposit fees to Global Tel*Link in order to fund a prepaid account used to pay for any interstate calls.

(*Id.* at 21 (footnotes omitted)). The Arkansas court appointed four inmates—one each from Arkansas, Minnesota, Pennsylvania, and Texas—to represent the FCA Class. (*Id.*). The Arkansas court further certified four separate "UE" subclasses to pursue unjust enrichment claims under the laws of specified states, including the following subclass represented by a Pennsylvania inmate, Walter Chruby:

> The Pennsylvania UE Subclass (Walter Chruby): All persons who, while in Pennsylvania, Georgia, Florida, Idaho, Kansas, Kentucky, Maryland, Maine, Mississippi, Missouri, New Mexico, Nevada, Oregon, South Dakota, Virginia or Wisoncsin [*sic*], within the applicable limitations period, paid to use inmate calling services provided by Global Tel*Link (including its operating subsidiaries) to make or receive one or more interstate phone calls from a correctional facility during a period of

> time when Global Tel*Link paid the facility a commission
> of any type in connection with the interstate calls.

(*Id.* at 22). The Arkansas court also appointed class counsel to represent the FCA class and each of the four UE subclasses. (*Id.* at 23).

Counsel and the parties in the Arkansas case have already conducted discovery. A class and subclasses have been certified and litigated to a final order on appeal. Class representatives and class counsel have been appointed. The case there appears to be ready for trial, or nearly so.

McNeil has only recently amended his *pro se* complaint in this action, seeking to convert it also into a putative class action concerning identical Fair Communications Act and unjust enrichment claims against the same defendant.[2] Neither the original nor the amended complaint in McNeil's action has yet been served upon the defendant. No discovery has been taken. No class has been certified, and no class representative or class counsel has been appointed.[3]

---

[2] Indeed, we note that the Pennsylvania UE Subclass definition pleaded by McNeil and the Pennsylvania UE Subclass definition adopted by the Arkansas court include the very same typo in "Wisconsin."

[3] With McNeil proceeding *pro se*, the prospect of successful certification of a class is remote, at best. *See Reid v. Ebbert*, Civil Action No. 1:16-cv-01403, at *1 (M.D. Pa. June 19, 2017), *report and recommendation adopted by* 2017 WL 4408539 (M.D. Pa. Oct. 4, 2017);

*(continued on next page)*

## II.  DISCUSSION

The claims and factual allegations of McNeil's amended complaint are virtually identical to those set forth in the amended complaint and class certification order filed in the Arkansas class action. In filing this putative class action, McNeil appears to seek to be appointed as a class representative in place of—or in addition to—Walter Chruby, the Pennsylvania inmate class representative in the Arkansas case. He has alleged the very same claims advanced in the Arkansas class action, based on substantially identical factual allegations. Indeed, he appears to fall squarely within the FCA class and Pennsylvania UE Subclass certified in the Arkansas case and represented by Chruby.

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought . . . ." 28 U.S.C. § 1404(a). "Although no party has requested it, we may consider transfer of venue

_____

*Nunez v. Lindsay*, No. 3:CV-05-1763, 2006 WL 3242111, at *1 (M.D. Pa. Nov. 7, 2006) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Alexander v. N.J. State Parole Bd.*, 160 Fed. App'x 249, 250 n.1 (3d Cir. 2005) (per curiam) ("[A] prisoner proceeding pro se may not seek relief on behalf of his fellow inmates.") (citing *Oxendine*); *Oxendine*, 509 F.2d at 1407 ("[I]t is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.").

under § 1404(a) sua sponte." *Keating Fibre Int'l, Inc. v. Weyerhaeuser Co., Inc.*, 416 F. Supp. 2d 1048, 1051 (E.D. Pa. 2006).

While there is no definitive set of factors that must be considered prior to a transfer of venue, the courts of this circuit typically consider several private and public factors, first enumerated by the Third Circuit in *Jumara*, 55 F.3d 873 (3d Cir. 1995):

> A court balances private and public interests when deciding to transfer venue. Private interests include a plaintiff's choice of forum, a defendant's preference, convenience of the parties as indicated by their physical and financial condition, convenience of witnesses to the extent that they may be unavailable in one forum, and the location of books and records to the extent they could not be produced in alternative fora. The public interests that a court considers include enforceability of a judgment, practical considerations that could make the trial easy, expeditious or inexpensive, relative administrative difficulty in the two fora resulting from court congestion, local interest in deciding a local controversy, public policies of the fora, and familiarity of the district court with applicable state law.

*Catanese v. Unilever*, 774 F. Supp. 2d 684, 687 (D.N.J. 2011) (citing *Jumara*, 55 F.3d at 879) (citations omitted).

Notwithstanding the *Jumara* factors, however, Pennsylvania's federal district courts have held that "where there is a strong likelihood of consolidation with a related action, a transfer of venue is warranted."

- 8 -

*Palagano v. NVIDIA Corp.*, Civil Action No. 15-1248, 2015 WL 5025469, at *3 (E.D. Pa. Aug. 25, 2015). "In fact, the presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other *Jumara* factors, such as the convenience of the parties and witnesses, would suggest the opposite. Therefore, the existence of a related action in another district is a sound reason for favoring transfer when venue is proper there, even though the transfer conflicts with the plaintiff's choice of forum." *Id.* (citation and internal quotation marks omitted).

This substantially greater weight given to the presence of a related action in the transferee forum is a manifestation of the Third Circuit's adoption of the "first-filed" rule, which provides that "[i]n all cases of federal concurrent jurisdiction the court which first has possession of the subject must decide it." *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (brackets in original).

> The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." Its primary purpose is to "avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." Although exceptions to the rule are rare, it is not a "rigid or inflexible rule to be mechanically applied" because it is grounded in principles of equity." Rare or extraordinary

circumstances, inequitable conduct, bad faith, and forum shopping are proper bases upon which a court may decline to apply the first-filed rule.

*Catanese*, 774 F. Supp. 2d at 687 (quoting *E.E.O.C.*, 850 F.2d at 971, 976–77). "It is of obvious importance to all the litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals to different circuit courts of appeals." *E.E.O.C.*, 850 F.2d at 974.

"[T]he most important consideration in a first-filed rule analysis is overlapping subject matter." *Catanese*, 774 F. Supp. 2d at 687; *see also Panitch v. Quaker Oats Co.*, Civ. No. 16-4586, 2017 WL 1333285, at \*2 (E.D. Pa. Apr. 5, 2017) ("The 'substantive touchstone of the first-to-file inquiry is subject matter.'"). Moreover, "[i]n a class action, the classes, and not the class representatives, are compared." *Catanese*, 774 F. Supp. 2d at 688 (brackets in original); *see also Panitch*, 2017 WL 1333285, at \*4 (quoting *Catanese*). Here, the class representatives are different, but in both cases the plaintiffs raise identical issues and seek identical relief on behalf of identical proposed classes against an identical defendant, GTL. "Because the cases are brought on behalf of the same putative nationwide class and 'the exact same [conduct is] at the heart of each lawsuit,' the

cases' substantial similarity is sufficient to trigger the first-filed rule.'"

*Panitch*, 2017 WL 1333285, at *4 (quoting *Palagiano*, 2015 WL 5025469,

at *4). As our sister courts have held in similar circumstances:

> If nationwide classes were certified in both actions, each
> of the named plaintiffs would be included in the other's
> class. This Court cannot allow a parallel action to proceed
> which involves putative absent class members from an
> earlier-filed class action. Such a situation would cause
> substantial duplication of effort, and worse, potentially
> inconsistent rulings. This would frustrate one of the
> primary purposes of the rule, which is to avoid the
> embarrassment of conflicting judgments.

*Catanese*, 774. F. Supp. 2d at 688 (citing *E.E.O.C.*, 850 F.2d at 977); *see*

*also Panitch*, 2017 WL 1333285, at *4 ("'Where each set of named plaintiffs

intends to represent the other set, the underlying principles of the first-

filed rule . . . permit this Court to defer to the court of first jurisdiction.'")

(quoting *Abushalieh v. Am. Eagle Exp.*, 716 F. Supp. 2d 361, 366 (D.N.J.

2010)).

There is nothing in the record to suggest any rare or extraordinary

circumstances, inequitable conduct, bad faith, or forum shopping that

might justify retention of this matter before this Court. *See E.E.O.C.*, 850

F.2d at 977; *Catanese*, 774 F. Supp. 2d at 687.

Accordingly, we recommend that this action be transferred pursuant

to 28 U.S.C. § 1404(a) for consolidation with *In re Global Tel\*Link Corp. ICS Litig.*, Civil Action No. 5:14-cv-5275-TLB (W.D. Ark.), a substantively identical, earlier-filed class action pending before the United States District Court for the Western District of Arkansas.[4]

## III.    RECOMMENDATION

For the foregoing reasons, it is recommended that this action be transferred pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Western District of Arkansas for consolidation with the substantively identical class action pending before it, styled *In re Global Tel\*Link Corp. ICS Litig.*, Civil Action No. 5:14-cv-5275-TLB (W.D. Ark.).

Dated: April 24, 2018          ***s/ Joseph F. Saporito, Jr.***
                              JOSEPH F. SAPORITO, JR.
                              United States Magistrate Judge

---

[4] We note that the Third Circuit has counseled against dismissal, recommending a stay or transfer of a second-filed suit instead. *See Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 220–21 (3d Cir. 2016) (en banc).

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY McNEIL, | |
| Plaintiff, | CIVIL ACTION NO. 3:15-cv-01243 |
| v. | (BRANN, J.) |
| | (SAPORITO, M.J.) |
| GLOBAL TEL-LINK, et al., | |
| Defendants. | |

## <u>NOTICE</u>

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated April 24, 2018. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Dated: April 24, 2018                      ***s/ Joseph F. Saporito, Jr.***
                                          JOSEPH F. SAPORITO, JR.
                                          United States Magistrate Judge